580 So.2d 616 (1991)
Forrest TUBB, Appellant,
v.
FLORIDA PAROLE COMMISSION, Appellee.
No. 90-957.
District Court of Appeal of Florida, Fifth District.
January 17, 1991.
Rehearing Denied June 4, 1991.
*617 Forrest Tubb, Lowell, pro se.
Kurt E. Ahrendt, Tallahassee, for appellee.
HAMMOND, K.C., Associate Judge.
Forrest Tubb appeals the order of the trial court denying his petition for a writ of mandamus. We reverse and remand with instructions that the trial court issue the writ.
In June of 1975, Tubb was convicted of second degree murder and sentenced to a term of life imprisonment. Once incarcerated, the Parole and Probation Commission, in accordance with the requirement set forth in the applicable statutes[1] and the Administrative Code,[2] interviewed Tubb for the purpose of establishing his presumptive parole release date. The Commission calculated Tubb's matrix range to be 59 months and then determined that an aggravating circumstance existed; namely, that "this man went to wife's home armed with gun and apparently looking for trouble". In recognition of this aggravating circumstance the Commission assessed an additional 61 months. As a result of this calculation, the Commission determined that Tubb's presumptive parole release date would be November 27, 1984.
In January of 1984, the Commission authorized Tubb to be released from prison on parole.
Five years later, in January of 1989, Tubb was convicted of two counts of aggravated assault and sentenced to concurrent terms of 4 1/2 years imprisonment. Since the commission of these crimes constituted a violation of his parole the Commission revoked Tubb's parole. The Commission again interviewed Tubb for the purpose of recalculating his presumptive parole release date. In making this calculation the Commission established Tubb's matrix range to be 100 months. The Commission again determined that aggravating circumstances existed, thus authorizing the Commission to assess additional months. The Commission first assessed an additional 72 months based on the fact that Tubb was convicted of two subsequent aggravated assaults. The Commission also assessed an additional 120 months stating, as it had previously stated in 1979, that Tubb "went to wife's home with gun and apparently looking for trouble". The Commission set Tubb's presumptive parole release date as October 25, 2002.
Tubb sought administrative review of this determination, challenging the computation of his presumptive parole release date. Specifically, Tubb claimed that the Commission had erred in assessing 120 months for the fact that he "went to wife's home with gun and apparently looking for trouble", arguing that since the Commission had earlier assessed only 61 months for the same aggravating circumstance, the Commission was constrained to assess 61 months at this time. The Commission denied Tubb administrative relief.
*618 Tubb thereafter filed with the trial court a petition for writ of mandamus,[3] requesting the court to order the Commission to correct his presumptive parole release date by reducing the 120 months to 61 months. The trial court entered an order denying the petition. This appeal followed.
As outlined above, the thrust of Tubb's argument is that, in recalculating his presumptive parole release date, the Commission was not authorized to assess more than 61 months for the aggravating circumstance that he "went to wife's home armed with gun and apparently looking for trouble" because the Commission had, in 1979, assessed only 61 months for the same circumstance. In support of this argument, Tubb cites to the case of Gaines v. Florida Parole and Probation Commission, 463 So.2d 1181 (Fla. 4th DCA), review denied, 475 So.2d 695 (Fla. 1985).
In Gaines, the defendant was adjudicated guilty of second degree murder and unlawful possession of a firearm by a convicted felon. He was sentenced to a term of life imprisonment for the murder and a term of 15 years imprisonment for the firearm conviction. While incarcerated, the Commission interviewed the defendant for the purpose of establishing his presumptive parole release date. In making the calculation the Commission did not take into account the defendant's conviction for possession of a firearm. The defendant later escaped from custody. Once apprehended, the defendant was convicted of escape and sentenced to a term of one year imprisonment. As a result of this new conviction for escape the defendant's parole was revoked, his original presumptive parole release date was vacated, and he received a new interview. After the second interview the Commission recalculated the defendant's presumptive parole release date. In recalculating the release date, the Commission cited as an aggravating circumstance the fact that the defendant had earlier been convicted of possession of a firearm. The Commission assessed an additional 20 months based on this aggravating circumstance. On appeal the defendant argued that it was improper for the Commission to use this prior conviction for possession of a firearm to aggravate his presumptive parole release date because that information had been before the Commission when the first release date was established; however, the Commission did not utilize the information at that time to aggravate his presumptive parole release date. The fourth district agreed. In reaching this conclusion, the court cited to the fact that the legislature has specifically set forth only three factors which justify modifying an inmate's presumptive parole release date; namely, (1) acquisition of new information not available at the initial interview; (2) institutional conduct; and, (3) exceptional circumstances. See §§ 947.16(4), 947.173(3) Fla. Stat. (1983). The fourth district ruled that the Commission is not authorized to modify an inmate's presumptive parole release date asserting "new information" if that information had already been considered and rejected by the Commission in establishing an earlier presumptive parole release date. 463 So.2d at 1183.
The ruling in Gaines makes clear that it was error for the Commission to assess more than 61 months for the aggravating circumstance that Tubb "went to wife's home with gun apparently looking for trouble" since this circumstance was not new information, nor an exceptional circumstance, nor institutional conduct. Accordingly, the order of the trial court is reversed and this matter remanded for issuance of a writ of mandamus directing the Commission to correct Tubb's presumptive parole release date by reducing the 120 months to 61 months. See also Taylor v. Florida Parole and Probation Commission, 543 So.2d 367 (Fla. 1st DCA 1989); Williams v. Florida Parole and Probation Commission, 515 So.2d 1044 (Fla. 1st DCA 1987).
*619 It should be noted that the Commission raises the argument that if this court concludes that the Commission is constrained to assess the same 61 months it had assessed in 1979, then it is possible that the computation of Tubb's presumptive parole release date "would render a date which has already passed" and thus, Tubb would be eligible for parole release immediately upon his return to incarceration. The Commission argues that such a decision would "create the ultimate revolving door for parole violators". This argument lacks merit.
First, the legislature has made clear that no inmate has an absolute legal right to receive parole. Instead, the decision to parole an inmate from the incarcerative portion of his sentence is an act of grace extended by the state. § 947.002(6), Fla. Stat. (1989). Thus, even if the recalculation of Tubb's presumptive parole release date establishes a release date which has already passed, Tubb is not absolutely entitled to immediate release. Rather, such release is permitted only if the Commission determines that Tubb is entitled to receive parole and that Tubb's institutional conduct has been satisfactory. § 947.1745, Fla. Stat. (1989). More importantly, however, is the fact that the Commission's argument fails to recognize that, since Tubb has violated his parole, this violation may be factored as an aggravating circumstance allowing the Commission to assess additional months. Fla. Admin. Code, Rule 23-21.007(5)(f). Furthermore, the actual infraction which constituted the parole violation may also establish an independent aggravating circumstance. Fla. Admin. Code, Rule 23-21.010(4)(a).
REVERSED AND REMANDED.
COBB and HARRIS, JJ., concur.
NOTES
[1] § 947.001 et seq., Fla. Stat. (1979).
[2] Chapter 23 of the Florida Administrative Code.
[3] The appropriate remedy for challenging presumptive parole release date is by writ of mandamus directed against the Florida Parole and Probation Commission. Florida Parole and Probation Commission v. Fuller, 491 So.2d 275 (Fla. 1986); Pannier v. Wainwright, 423 So.2d 533 (Fla. 5th DCA 1982).